# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHARLES RODNEY KNAPP,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTHEW CATE, et al.,<br><br>        Defendants. | CASE NO. 1:08-cv-01779-AWI-WMW PC<br><br>ORDER RE MOTIONS FOR INJUNCTIVE RELIEF, RECONSIDERATION, WITHDRAWAL OF CONSENT TO MAGISTRATE JURISDICTION<br><br>(Docs. 13, 15, 16) |

Plaintiff Eric Charles Rodney Knapp ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act ("ADA"). Pending before the court are Plaintiff's motions for (1) a temporary restraining order/preliminary injunction (Doc. #13); (2) reconsideration of the Court's April 13, 2009 screening order (Doc. #15); and (3) withdrawal of consent to magistrate judge jurisdiction (Doc. #16).

**I.**  **Background**

Plaintiff is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the Kern Valley State Prison in Delano, California. However, the events in his complaint took place while Plaintiff was incarcerated at the Sierra Conservation Center in Jamestown, California. Plaintiff alleges that his rights under the First and Eighth Amendment and the ADA were violated when prison officials notified Plaintiff of their decision to revoke his single cell status and house Plaintiff with a cell mate. Plaintiff contends that prison officials were deliberately indifferent to his medical needs because his post traumatic stress disorder required that

1

he be housed in a single cell. Plaintiff also alleges that prison officials retaliated against him because of his mother's political activism.

## II. Discussion

### A. Motion for Temporary Restraining Order/Preliminary Injunction

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). A preliminary injunction is available to a plaintiff who "demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F. 2d 935, 937 (9th Cir. 1987). Under either approach the plaintiff "must demonstrate a significant threat of irreparable injury." Id. Also, an injunction should not issue if the plaintiff "shows no chance of success on the merits." Id. At a bare minimum, the plaintiff "must demonstrate a fair chance of success of the merits, or questions serious enough to require litigation." Id.

Federal courts are courts of limited jurisdiction, and as a preliminary matter, the court must have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985) (emphasis added). By order issued April 13, 2009, the court dismissed Plaintiff's complaint, with leave to amend, for failure to state any claims upon which relief may be granted. Thus, at this point in time, there is no case or controversy before the court, and the court has no jurisdiction to issue any temporary restraining orders or preliminary injunctions. Therefore, Plaintiff's motion for a temporary restraining order/preliminary injunction is denied.

**B.** **Motion for Reconsideration**

Plaintiff asks the Court to revisit its April 13, 2009 screening order and reconsider its finding that Plaintiff's complaint failed to state any cognizable claims. Specifically, Plaintiff claims that the court erred when it determined: (1) that defendants do not violate Plaintiff's rights when they retaliate against him for his mother's exercise of First Amendment rights (Request By Plaintiff for Reconsideration, Modification, and/or Clarification By The District Court Of The Magistrate Judge's Ruling 4:28-5:2); (2) that defendants do not violate Plaintiff's rights when they threaten to forcibly cell him with other prisoners (Req. By Pl. For Reconsideration 5:4-12); and (3) that defendants do not violate Plaintiff's rights under the RA and/or the ADA when they ignore the recommendations to single-cell Plaintiff made by CDCR mental health doctors (Req. By Pl. For Reconsideration 5:13-19). Plaintiff also claims (4) that it was erroneous of the Court to prohibit Plaintiff from adding new or unrelated claims in his amended complaint. The Court will address each argument in turn.

**1.** **Plaintiff Lacks Standing to Seek Redress for Defendants' Alleged Interference with his Mother's First Amendment Rights**

Plaintiff, in his Original Complaint, alleged that Defendants retaliated against him for his mother's exercise of free speech. Plaintiff's mother is a vocal advocate for the rights of prisoners like her son, and was critical of the policies and practices of CDCR that threatened those rights. Plaintiff alleges generally that the maltreatment he received while in CDCR custody was retaliation for his mother's political activism.

Assuming, without deciding, that Plaintiff alleges sufficient facts to support a retaliation claim, it states a claim for retaliation against <u>his mother</u> for <u>his mother's</u> exercise of <u>her</u> rights under the First Amendment. The Court dismissed Plaintiff's claim because, given the facts alleged, a claim for retaliation more properly lies with Plaintiff's mother, as it is her rights being interfered with. Plaintiff has offered no authority as to why he has standing to bring suit to vindicate his mother's constitutional rights.

///
///
///

## 2. Plaintiff's Original Complaint Fails to State a Cognizable Claim under the First or Eighth Amendment

Plaintiff, in his Original Complaint, alleges that Defendants violated his rights under the Eighth Amendment by threatening to revoke his single cell status and housing him with a cell-mate. Of crucial importance to the Court's decision to dismiss Plaintiff's claim is the fact that Plaintiff was never actually double-celled. Plaintiff's subsequent motions filed after his complaint also demonstrated that it did not appear the Plaintiff would be double-celled by Defendants because Plaintiff had been transferred to a different institution. The Court lacks jurisdiction to decide whether Defendants would have violated the Eighth Amendment if they had double-celled Plaintiff. Deciding that question would have been premature, as Plaintiff had not yet been double-celled and his constitutional claim was not ripe for adjudication. Had Plaintiff actually been double-celled, it would have presented a different factual scenario for the Court to decide.

Thus, the question to be decided was whether being threatened with double-celling, but not actually double-celled, states a cognizable claim for an Eighth Amendment violation. The Court reiterates its finding that such facts do not state a cognizable Eighth Amendment claim because verbal threats are not "sufficiently serious" enough to amount to cruel and unusual punishment under the Eighth Amendment. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (stating that "it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong").

Plaintiff's retaliation claim was dismissed because the Court could not identify what the protected conduct was that Defendants were retaliating against. The Court noted that the idea that Defendants threatened Plaintiff with double-celling in retaliation for Plaintiff's protected conduct in complaining about the decision to double-cell him was paradoxical. The allegations present a chicken-and-eggs problem: how could the decision to double-cell Plaintiff have been a retaliatory response to Plaintiff's complaints about the decision to double-cell him? Logically, the decision to double-cell Plaintiff must have been made before Plaintiff first exercised his First Amendment right to complain about the decision to double-cell him.

The Court recognizes that the decision to double-cell Plaintiff may have been a retaliatory response to Plaintiff's protected First Amendment activity <u>before</u> he arrived at Sierra Convention

Center. However, nowhere in his complaint does Plaintiff explicitly allege that the prison officials at the Sierra Convention Center had actual knowledge of Plaintiff's protected activities before he was transferred to Sierra Convention Center. Although the Court is obligated to liberally construe Plaintiff's pleadings, it would go far beyond liberal construction to supply Plaintiff's complaint with such critical allegations. If it is the case that Defendants were aware of Plaintiff's pre-Sierra Convention Center protected activities and made the decision to double-cell Plaintiff in retaliation for those activities, Plaintiff simply needs to provide those allegations in his amended complaint.

### 3. Plaintiff's Original Complaint Fails to State a Cognizable Claim Under the RA/ADA

Plaintiff alleges that Defendants violated the RA/ADA when they made the decision to revoke his single-cell status. As discussed with his Eighth Amendment claim, Plaintiff was not yet double-celled. Thus, deciding whether, hypothetically, <u>if</u> Plaintiff was actually double-celled it <u>would have</u> violated the RA/ADA would have been premature as the claim was not yet ripe. See supra Part II.B.2.

More fundamentally, the decision to revoke Plaintiff's single-cell status was a medical decision that was not made <u>because of</u> Plaintiff's disability. The RA/ADA prohibits discrimination on the basis of disability. In order to state a cognizable RA/ADA claim, Plaintiff must allege that the decision to revoke his single-cell status was out of discrimination against Plaintiff's status as a disabled person - not because Plaintiff was litigious, or because Plaintiff's mother was politically outspoken. At best, the decision to revoke Plaintiff's single-cell status resulted from Defendants' skepticism that single-cell status was medically necessary. The treatment or lack of medical treatment for Plaintiff's condition does not provide a basis upon which to impose liability under the RA/ADA. <u>Burger v. Bloomberg</u>, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); <u>Fitzgerald v. Corr. Corp. of Am.</u>, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within the scope of the ADA); <u>Bryant v. Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Aside from defendants' medical treatment decisions of which plaintiff complains and which are not an appropriate basis upon which to predicate an ADA claim, plaintiff alleges no facts to show that any defendant

participated in, or was otherwise responsible for, excluding him from numerous activities, programs, and benefits otherwise available to him. Therefore, plaintiff fails to state a cognizable claim for violation of his rights under the RA/ADA.

### 4. FRCP 18(a) and 20(a)(2) Do Not Permit Plaintiff to Join Unrelated Claims

Plaintiff argues that the Court committed error when it warned Plaintiff against bringing new or unrelated claims in his amended complaint. Plaintiff misconstrues the Court's language. The Court was not prohibiting Plaintiff from joining claims that would have been permissible under Federal Rule of Civil Procedure 18 and 20. The Court's language was aimed at prohibiting Plaintiff from expanding the scope of litigation by attempting to join <u>unrelated</u> claims in his amended complaint - a frequent-enough practice in the Court's experience with pro se prisoner litigants to warrant language advising against it.

## C. Motion to Withdraw Consent to Magistrate Judge Jurisdiction

Plaintiff, after having consented to jurisdiction by U.S. Magistrate Judge on December 1, 2008, now seeks to withdraw his consent by motion. Plaintiff argues that "he no longer has faith that a Magistrate Judge either can or will be impartial and serve the interests of justice after and because the assigned Magistrate Judge in this case . . . (1) failed to promptly screen Plaintiff's initiating complaint . . . (2) failed to ever address or otherwise even acknowledge Plaintiff's emergency motions for preliminary injunctive relief . . . and (3) improperly screened, construed, and dismissed Plaintiff's initiating complaint." (Withdrawal of Consent to Jurisdiction by U.S. Magistrate Judge 1:24-2:9.)

The Court is unaware of any statutory authority to withdraw consent to jurisdiction by U.S. Magistrate Judge after it has been given. Nor has Plaintiff cited to any such authority. However, under 28 U.S.C. § 636(c)(4), "[t]he court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection." Plaintiff has not demonstrated extraordinary circumstances to justify vacating the proceedings before a magistrate judge. Plaintiff's complaint was filed on November 20, 2008 and screened on April 13, 2009 - not an extraordinary delay considering the vast amount

of civil litigation before the Court.  Plaintiff's assertion that the court failed to address his motions for preliminary injunctions is equally unavailing.  As discussed above, after Plaintiff's complaint was dismissed for failure to state a claim, this Court lacks jurisdiction to grant any preliminary injunctive relief.  <u>See</u> <u>supra</u> Part II.A.  Finally, as reiterated above in addressing Plaintiff's motion for reconsideration, the Court rejects the contention that Plaintiff's complaint was "improperly screened, construed, and dismissed".  <u>See</u> <u>supra</u> Part II.B.  The dismissal of Plaintiff's complaint does not demonstrate "extraordinary circumstances" as Plaintiff has the opportunity to file an amended complaint curing the deficiencies identified in the Court's previous screening order.

### III.   **Conclusion and Order**

Plaintiff's motion for a temporary restraining order/preliminary injunction is denied.  Plaintiff's complaint was dismissed for failure to state a claim and the Court therefore lacks jurisdiction to grant Plaintiff's motion for preliminary injunctive relief.  Plaintiff's motion for reconsideration is granted.  However, upon review of the record, Plaintiff's request for relief from the court's April 13, 2009 order is denied.  Finally, Plaintiff's motion to withdraw consent to magistrate jurisdiction is denied.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion for a temporary restraining order and injunctive relief is denied;
2. Plaintiff's motion for reconsideration is granted;
3. Plaintiff's request for relief from the court's order of February 13, 2002 is denied;
4. Plaintiff's motion to withdraw consent to magistrate jurisdiction is denied;

IT IS SO ORDERED.

Dated:   **June 16, 2009**            /s/ **Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE