# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHARLES RODNEY KNAPP, | CASE NO. 1:08-cv-01779-YNP PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| MATTHEW CATE, et al., | |
| Defendants. | (Doc. 25) |
| | RESPONSE DUE WITHIN 30 DAYS |

Plaintiff Eric Charles Rodney Knapp ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the Sierra Conservation Center ("SCC") in Jamestown, California. Plaintiff is suing under section 1983 for the violation of his rights under First Amendedment. Plaintiff names M. Alexander (psychologist), Backlund (psychologist), P. Bolles (medical appeals coordinator), Matthew Cate (CDCR agency secretary), F. X. Chavez (chief deputy warden), Ivan D. Clay (warden), T. Esquer (appeals coordinator), D. E. Gibb (captain), Nola Grannis (chief, CDCR inmate appeals), C. Hammond (staff services manager), S. Hannah (correctional counselor II), C. Koenig (captain), Russel "Rusty" Otto (chief psychologist), M. Pate (correctional counselor II), Peters (psychiatrist), Rick Pimental (captain), P. T. Rawlinson (associate warden), K. Robertson (psychologist), M. Scott (classification services representative), W. Semsen (appeals coordinator), and John Stclair (chief medical officer) as defendants. For the reasons set forth below, Plaintiff is ordered to either notify the Court of his

willingness to proceed only on the claims found to be cognizable in this order, or to file an amended complaint.

**I.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

///
///
///

II. **Background**

A. **Procedural Background**

Plaintiff filed the Original Complaint in this action on November 20, 2008. (Doc. #1.) The Court screened Plaintiff's Original Complaint on April 13, 2009. (Doc. #14.) The Court dismissed Plaintiff's Original Complaint for failing to state any claims and granted Plaintiff leave to file an amended complaint. Plaintiff filed his First Amended Complaint on July 30, 2009. (Doc. #25.) This action proceeds on Plaintiff's First Amended Complaint.

B. **Factual Background**

Plaintiff alleges that he was retaliated against by Defendants because he is well-known for exercising his First Amendment rights via administrative grievances, habeas corpus petitions, and other legal claims. Plaintiff also alleges that he is being retaliated against because his mother is known to advocate on behalf of prisoners abused by the CDCR. Plaintiff alleges that his mother is the founder of "United for No Injustice, Oppression, Neglect" ("UNION"), a group that actively advocates on behalf of prisoners. Plaintiff claims that he has been subjected to retaliatory transfers to different prisons and retaliatory interference with his medical treatment.

Starting at some point in 2003, Plaintiff was housed in a single-cell after he attempted to kill himself. Plaintiff alleges that he suffers from post-traumatic stress syndrome that is exacerbated when he is housed with another inmate. Plaintiff's mental health dramatically improved after he was single celled.

On July 31, 2008, Plaintiff was transferred to SCC. On August 13, 2008, Plaintiff alleges that Defendants Koenig and Pate brought Plaintiff before a Unit Classification Committee ("UCC"). Plaintiff alleges that members of the UCC knew about Plaintiff's litigious behavior and political activism and chose to harass Plaintiff in retaliation for Plaintiff's litigious history. At the meeting, Plaintiff was falsely told by Koenig and Pate that SCC does not single cell prisoners, that the mental health doctors had no say in whether prisoners are single-celled, repudiated Plaintiff's mental health assessments, told Plaintiff that the documentation in his prison record about his mental condition had mysteriously disappeared, callously interrogated Plaintiff about his past traumas, told Plaintiff his single-cell status would be revoked, and put Plaintiff on a waiting list for a job assignment requiring

physical labor despite orders from doctors prohibiting Plaintiff from engaging in physical labor. Plaintiff alleges that Defendants Cate, Clay, Esquer, Koenig, and Pate knew about the meeting but failed to take corrective action on Plaintiff's behalf.

On August 13, 2008, Plaintiff alleges that Koenig and Pate prepared a "CDC form 128-G" that was placed in Plaintiff's permanent prison record and contained fraudulent statements aimed at revoking Plaintiff's single-cell status. Plaintiff alleges that the form stated that Plaintiff had no medical or mental conditions qualifying as disabilities under the Rehabilitation Act or Americans with Disabilities Act, that Plaintiff's single-cell status had been lawfully revoked by CDCR officials in 2003 and 2005. On November 13, 2008, Plaintiff was brought before another ICC meeting to address his single-cell status where Defendants Clay, Gibb, Hannah, and Otto informed Plaintiff that they had decided to revoke Plaintiff's single-cell status and would give "Mental Health" approximately one week to withdraw their recommendations for Plaintiff's single-cell status.

Plaintiff also alleges that since he arrived at SCC on July 31, 2008, he discovered that the conditions in his cell were "unlike any he had previously encountered elsewhere." (Compl. 54:14-16.) Plaintiff alleges that the cells "emanate an overpoweringly dank and musty smell much like old basements," "[a]ir barely puffs and trickles into most of the cells through a single vent," the mattress racks are heavily corroded with rust, and "[d]ust, flaked-off skin, dandruff, lint . . . just float around inside the cells and get breathed into prisoners' lungs." (Compl. 54:18-55:4.) Plaintiff alleges that he filed grievances about the in-cell conditions and that Defendants Chavez, Clay, Esquer, Grannis, Pimental, and Semsen knew of the conditions and did not take corrective action.

Plaintiff's remaining factual allegations concern events that occurred after Plaintiff initiated this lawsuit. For reasons explained below, those events are not properly the subject of this lawsuit. See discussion infra Part III.E.

**III. Discussion**

    **A.    First Amendment Claims - Retaliation**

Plaintiff claims that Defendants retaliated against him for exercising his protected First Amendment right to file grievances against the government. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may

support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

        Plaintiff alleges that he is engaged in a wide-variety of conduct protected by the First Amendment, such as filing inmate grievances and initiating civil litigation complaining about conditions in prison and abuse by prison officials.  Plaintiff further alleges that Defendants were aware of Plaintiff's reputation for advocacy and for that reason, harassed Plaintiff by attempting to revoke Plaintiff's single-cell status.  Plaintiff also alleges that during ICC meetings where his single-cell status was discussed, Defendants harassed him by forcing him to recall and describe the traumatic experiences in his past that lead to his post traumatic stress disorder.  Plaintiff alleges that Defendants Koenig, Pate, Clay, Gibb, Hannah, and Otto participated at the ICC meetings where Plaintiff was harassed.  Plaintiff's allegations are sufficient to support a cognizable claim against Defendants Koenig, Pate, Clay, Gibb, Hannah, and Otto for retaliation against the exercise of his First Amendment rights.

        However, Plaintiff alleges that Defendants Esquer, Chavez, Grannis, Rawlinson, and Semsen had knowledge of the retaliatory actions and failed to take any corrective action on Plaintiff's behalf.  The failure to take remedial action after a constitutional violation occurs does not cause or contribute to that violation.  Plaintiff's allegations regarding any misconduct by Esquer, Chavez, Grannis, Rawlinson, or Semsen in reviewing Plaintiff's grievances are unclear.  Plaintiff only vaguely alleges that they "caused/allowed review of his related formal grievance(s) to be arbitrarily, capriciously, and/or otherwise unlawfully conducted and/or obstructed in violation of his guaranteed rights and protections under the CDC[R]'s established grievance procedures and governing regulations."

5

(Compl. 30:2-7, 32:3-8, 34:7-12.) Plaintiff, based on those vague allegations, concludes that Esquer, Chavez, Grannis, Rawlinson, and Semsen "directly participated" in the deprivation of Plaintiff's rights. Denying or ignoring Plaintiff's grievances complaining about retaliation does not constitute sufficient participation in the retaliatory actions to warrant liability. Plaintiff does not provide any factual detail about how his grievances were wrongfully processed, or any allegations that support the inference that they were "unlawfully conducted" because of Plaintiff's protected conduct. As such, Plaintiff fails to state any claims against Defendants Esquer, Chavez, Grannis, Rawlinson and Semsen for retaliation.

### B.  Eighth Amendment Claims

Plaintiff claims that Defendants' actions constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

///

///

1. **Verbal Threats/Abuse**

Plaintiff alleges that Defendants Koenig, Pate, Clay, Gibb, Hannah, and Otto deliberately caused Plaintiff to experience emotional trauma by threatening to revoke his single-cell status. Verbal threats and abuse do not generally rise to the level of cruel and unusual punishment under the Eighth Amendment. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). However, Plaintiff alleges that Defendants' verbal abuse was particularly calculated to cause psychological damage against him. Plaintiff alleges that his single-cell status was ordered by doctors due to his post traumatic stress syndrome after Plaintiff attempted to commit suicide while being celled with another inmate. Plaintiff also describes in great detail the psychological toll that being double-celled inflicted upon him. Plaintiff also alleges that Defendants made false statements about the medical doctors' authority to order single-cell status and told Plaintiff that the medical documentation in his file supporting single-cell status had mysteriously disappeared. Plaintiff further alleges that Defendants inflicted furthering suffering by forcing Plaintiff to verbally recall all his past traumatic experiences during ICC meetings. Defendants allegedly did this in retaliation for Plaintiff's litigious behavior. Given the extreme and calculated nature of the alleged actions by Defendants, the verbal abuse could have amounted to cruel and unusual punishment under the Eighth Amendment. Plaintiff states a cognizable claim against Defendants Koenig, Pate, Clay, Gibb, Hannah, and Otto for violation of the Eighth Amendment through their verbal harassment of Plaintiff during ICC meetings.

2. **Conditions of Confinement**

Plaintiff alleges that the conditions in his cell were inhumane and that Defendants Chavez, Clay, Esquer, Grannis, Pimental, and Semsen knew about the conditions and failed to remedy them. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).

"The Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Plaintiff has provided

7

allegations that demonstrate that the conditions were uncomfortable, but has not provided allegations that demonstrate that the conditions were so inhumane as to amount to a deprivation of adequate shelter or sanitation. Plaintiff does not allege that he suffered any serious injury as a result of the conditions in the prison. Further, Plaintiff does not identify any threat of serious injury as a result of the conditions in the prison. The allegations that his cell smelled bad, did not get adequate air flow, and that his bed frame was rusty are not sufficient to state an Eighth Amendment claim. Plaintiff must demonstrate what excessive risk to inmate safety those conditions posed. Plaintiff fails to state any claims for violation of the Eighth Amendment due to the conditions in his cell.

    **C.**    **Fourteenth Amendment Claims**

        **1.**    **Equal Protection**

Plaintiff claims that Defendants' actions deprived him of equal protection of the laws in violation of the Fourteenth Amendment. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005). If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

Plaintiff claims that he was deprived of equal protection of the law. However, Plaintiff fails to identify what identifiable class he is a member of, how he was treated differently from others similarly situated, or that there was no rational basis for the difference in treatment. Plaintiff's bare conclusion that he was deprived of equal protection of the law is not sufficient to state a claim. Plaintiff fails to state a cognizable claim against Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment.

### 2. Due Process

Plaintiff claims that he was deprived of a protected liberty interest without due process of law. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff does not identify what protected liberty interest he was deprived of. Plaintiff's right not to be retaliated against and his right to not be subjected to cruel and unusual treatment are rights that are specifically protected by the First and Eighth Amendments. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). Thus, Plaintiff's claims regarding retaliation against his protected conduct and cruel and unusual punishment should proceed as claims under the First and Eighth Amendment, not under the Due Process Clause.

Plaintiff also claims that Defendants violated prison regulations by rejecting or denying his grievances regarding prison official misconduct. The Due Process Clause does not guarantee meaningful access to an inmate grievance system. Inmates have no liberty interest in the processing

of an inmate appeal because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). The failure to timely process inmate appeals pursuant to state prison regulations is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Nor did the delay, denial, or screening-out of Plaintiff's inmate appeals, even if erroneous, result in an "atypical and significant hardship." Further, the violation of prison regulations governing the processing of Plaintiff's inmate grievances does not in itself amount to a violation of due process. Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Thus, the core inquiry is whether Plaintiff suffered an atypical and significant hardship--not whether regulations have been violated. Inability to access an inmate grievance system is not an atypical and significant hardship. Plaintiff fails to state any cognizable claims for violation of the Due Process Clause of the Fourteenth Amendment.

### D. Rehabilitation Act/Americans with Disabilities Act Claims

Plaintiff claims that Defendants violated the Rehabilitation Act and the Americans with Disabilities Act. Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). In order to state a claim of disability discrimination under Title II, Plaintiff must allege four elements: (1) that Plaintiff is an individual with a disability; (2) that Plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) that Plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public

entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of Plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (citing Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).

Plaintiff has not alleged that he was actually excluded from any benefits, programs, or service. Nor has Plaintiff alleged that he was discriminated against because of his disability. Plaintiff was threatened with being double-celled, but never double celled. The threat arose not from discrimination on account of Plaintiff's disability, but because of his reputation for litigiousness. Thus, Plaintiff's claims are more appropriate raised under the First and Eighth Amendments, not the ADA or RA. Plaintiff fails to state any cognizable claims for violation of the ADA or RA.

### E. Claims That Arose After Plaintiff Initiated This Action

Plaintiff attempts to add claims regarding events that occurred after Plaintiff initiated this lawsuit. Plaintiff may not expand the scope of this lawsuit by adding claims that arose after this action was initiated. Plaintiff is required to exhaust any administrative remedies available to him before bringing suit. "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense and Plaintiff is not required to specifically plead or demonstrate exhaustion in his complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). A prisoner does not comply with the exhaustion requirement by exhausting available remedies during the course of litigation. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Thus, Plaintiff may not add claims to this lawsuit that he had exhausted during the course of litigation. Those claims must be brought in a separate action.

### IV. Conclusion and Order

Plaintiff's First Amended Complaint states cognizable claims against Defendants Koenig, Pate, Clay, Gibb, Hannah, and Otto for retaliation against Plaintiff's protected conduct in violation of the First Amendment and cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the

Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff six (6) summonses and six (6) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged

in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Koenig, Pate, Clay, Gibb, Hannah, and Otto for violation of the First and Eighth Amendments; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:  October 13, 2009**             /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE