1    KAMALA D. HARRIS, State Bar No. 146672
     Attorney General of California
2    MISHA D. IGRA, State Bar No. 208711
     Supervising Deputy Attorney General
3    DAVID E. BRICE, State Bar No. 269443
     Deputy Attorney General
4      1300 I Street, Suite 125
     P.O. Box 944255
5      Sacramento, CA 94244-2550
     Telephone: (916) 324-8010
6      Fax: (916) 324-5205
     E-mail: David.Brice@doj.ca.gov
7    *Attorneys for Defendants*
     *Semsen, Gibb, Koenig, Hannah, Lyons, Pate,*
8    *Backlund, Robertson, Clay, Esquer and Otto*

9            IN THE UNITED STATES DISTRICT COURT

10         FOR THE EASTERN DISTRICT OF CALIFORNIA

11               FRESNO DIVISION

12

13

**ERIC CHARLES RODNEY K'NAPP,**

                  Plaintiff,

     v.

**MATTHEW CATE, et al.,**

                  Defendants.

1:08-cv-01779 BAM

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**

     **PLEASE TAKE NOTICE** that Defendants move for a protective order from discovery requests propounded by Plaintiff pending the outcome of their motion to revoke Plaintiff's *in forma pauperis status status*, which is currently pending before the Court, and because Plaintiff's requests for admission are inappropriate and unduly burdensome.

     **PLEASE TAKE FURTHER NOTICE** that this motion is submitted, pursuant to Local Rule 230 (*l*), on the record and without oral argument, unless otherwise ordered by the Court.

     **PLEASE TAKE FURTHER NOTICE** that this motion for protective order is based on this notice, the motion, the attached memorandum of points and authorities, and the attached

/ / /

1

Declaration and exhibit, as well as the pleadings and documents on file in this action, and such other matters as may properly come before this Court.

Dated:  May 18, 2012                                Respectfully submitted,

                                                    KAMALA D. HARRIS
                                                    Attorney General of California
                                                    MISHA D. IGRA
                                                    Supervising Deputy Attorney General


                                                    /s/ David E. Brice

                                                    DAVID E. BRICE
                                                    Deputy Attorney General
                                                    *Attorneys for Defendants*

Defendants' Notice of Motion and Motion for Protective Order  (1:08-cv-01779 BAM)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Defendants ask the Court for a protective order from discovery requests propounded by Plaintiff, pending the outcome of their motion to revoke IFP status, and due to the inappropriate nature of the requests for admission.

**BACKGROUND**

Plaintiff Eric K'napp, a pro se state prisoner, originally brought this suit against multiple defendants in 2008. K'napp amended his complaint multiple times and the Court screened the third amended complaint on August 8, 2011. (ECF No. 60.) In its screening order, the Court allowed the case to go forward against Defendants Koenig, Pate, Otto, Backlund, Roberson, Clay, Gibb, Hannah, Semsen, Lyons, and Esquer for deliberate indifference in violation of the Eighth Amendment in their individual capacities, relating to K'napp's single-cell status. (ECF No. 60 at 18.) All other claims and parties were dismissed. (*Id.*)

On March 2, 2012, Defendants filed their answer. (ECF No. 91.) The Court opened discovery on March 5, 2012. (ECF No. 92.) On March 9, 2012, Defendants moved to revoke K'napp's *in forma pauperis* (IFP) status. (ECF No. 95.) That motion remains pending.

On April 19, 2012, K'napp served Defendants with Requests for Production of Documents, Electronically Stored Information, and Tangible Things, and to Enter Onto and Inspect Land, Property, and Premises, consisting of 34 separate requests. (Brice Decl. ¶ 2.) On May 8, 2012, K'napp served Defendants with 11 sets of Requests for Admission, consisting of 100 separate requests for each Defendant. (Brice Decl. ¶ 3.) This totals 1,134 separate discovery requests.[1]

**ARGUMENT**

Under Rule 26(c), a party from whom discovery is sought may move for a protective order and the court may, for good cause, issue an order to protect the party from undue expense or burden. Fed. R. Civ. P. 26(c)(1); *see also Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) ("A district court may limit discovery 'for good cause.'") Additionally, a court may limit

---

[1] Responses to the requests for production are due on June 3, and responses to the requests for admission are due on June 22. (Brice Decl. ¶¶ 2, 3.) Thus, this motion is timely filed. *See Seminara v. City of Long Beach*, 1995 U.S. App. LEXIS 29729, *13 (9th Cir. 1995) ("A motion for protective order is timely if made prior to the date set for the discovery.")

1   discovery when it determines the burden or expense of the proposed discovery outweighs its

2   likely benefit considering the needs of the case, or when the discovery sought is unreasonably

3   cumulative or duplicative.  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

4        There is a two part test for whether a court will stay discovery when a party files a motion

5   to dismiss.  *Calif. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc*., 2011 U.S. Dist. LEXIS

6   6296, *12 (E.D. Cal. 2011).  First, the pending motion must be potentially dispositive of the

7   entire case, and second, the court must decide whether the pending motion can be decided absent

8   additional discovery.  *Id*.

9        **A.    The pending motion to revoke IFP status could lead to dismissal of the
              entire case and there is still ample time to conduct discovery.**
10

11       In this case, there is no pending motion to dismiss, but Defendants have moved to revoke

12   K'napp's IFP status.  Should this motion be successful, K'napp will have to pay the filing fee, or

13   face dismissal of the entire case.  *See* 28 U.S.C. 1915(g).  None of the issues raised in the

14   discovery requests are relevant to the determination of the motion to revoke IFP status.  (Brice

15   Decl. ¶ 5.)

16       Also, the scheduling order allows discovery to continue until November 5, 2012.  (ECF No.

17   92.)  Thus, K'napp will not be prejudiced by waiting until there is a ruling on the motion to

18   revoke IFP status before he receives responses to his discovery requests.  There is still ample time

19   to conduct discovery.

20       **B.    The 1,100 requests for admission are inappropriate and duplicative, and
              responding would be an undue burden on Defendants.**
21

22       Plaintiff K'napp's 100 requests for admission to each defendant appear to be identical and

23   not specifically tailored to each defendant; there are many that require legal conclusions not

24   appropriate for requests for admission (*e.g.* No. 77 "Double-celling Plaintiff would be

25   deliberately indifferent of Plaintiff's known mental condition"); many ask for information that is

26   easily obtainable from another source (*e.g.* No. 67 "California Penal Code § 5068 and 15 CCR §

27   3375.2(b)(10) indicate that CDCR prisoners shall be housed at institutions nearest their homes");

28   others are speculative, vague, and ambiguous (*e.g.* No. 90 "At some point in time before Plaintiff

4

1  entered the room and appeared at the Institution Classification Committee (ICC) of 11/13/08, you

2  could have had access to any part(s) of any volume(s) of Plaintiff's Central File whenever you so

3  desired, for no particular reason, and without being under any type of constant or direct visual

4  monitoring.") (*See* Brice Decl. ¶ 4, Exhibit A.)

5     Responding to these requests for admission would be overly burdensome to Defendants.

6  Furthermore, these requests appear to have no purpose other than to harass Defendants and

7  increase the time spent by their attorney on busy work answering these 1,100 requests, which are

8  duplicative.  Thus, their likely benefit is far outweighed by their burden.  Defendants ask the

9  Court to issue a protective order staying discovery until after the Court rules on the pending

10  motion to revoke IFP status.  Defendants further request an order limiting K'napp to 25 requests

11  for admission only and require him to reformulate his requests as contemplated by Rule 36 so that

12  they are straightforward and factual.  *See* Fed. R. Civ. P. 36.

13  **CONCLUSION**

14     For the foregoing reasons, Defendants ask the Court to order that no discovery by any party

15  be undertaken, and that Defendants will not have to respond to K'napp's discovery requests,

16  including requests for admission, until further order of the Court.  Defendants further request that

17  K'napp be ordered to reformulate and resubmit his requests for admission so that they are

18  straightforward and factual and that he be limited to no more than 25 requests for admission.

19

20  Dated:  May 18, 2012        Respectfully submitted,

21               KAMALA D. HARRIS
             Attorney General of California

22               MISHA D. IGRA
             Supervising Deputy Attorney General

23               */s/David E. Brice*

24               DAVID E. BRICE

25               Deputy Attorney General
             *Attorneys for Defendants*

26

27

28

5

## DECLARATION OF DAVID BRICE

I, David E. Brice, declare:

1.    I am a Deputy Attorney General licensed to practice law in California and before this Court.  I represent Defendants in this matter.

2.    On April 24, 2012, our office received Requests for Production of Documents, Electronically Stored Information, and Tangible Things, and to Enter Onto and Inspect Land, Property, and Premises from Plaintiff Eric K'napp.  There are 34 separate requests.  The requests were dated April 19, 2012, by Mr. K'napp.  Defendants' responses are due on or before June 3, 2012.

3.    On May 14, 2012, our office received 11 sets of Requests for Admissions, directed to each of the 11 defendants in this case, from Mr. K'napp.  Each set of requests contained 100 separate requests for admission.  The requests were dated May 8, 2012, by Mr. K'napp. Defendants' responses are due on or before June 22, 2012.

4.    Attached as Exhibit A to this declaration is a true copy of the requests for admission served on Defendant Backlund by Mr. K'napp.  Based on my review, this set of 100 requests for admission is identical to each set of 100 requests for admission that Mr. K'napp served on each of the other 10 defendants.

5.    None of these discovery requests concern Defendants' pending motion to revoke *in forma pauperis* status in this case.

I declare under penalty of perjury that this declaration is true and correct.  Executed May 18, 2012, at Sacramento, California.

*/s/ David E. Brice*
DAVID E. BRICE
Deputy Attorney General
*Attorney for Defendants*

SA2012104627
31457072.doc

6

1

## DECLARATION OF SERVICE BY U.S. MAIL

2
Case Name:   Eric Knapp v. Matthew Cate, et al.
No.:             1:08-cv-01779 BAM

3

I declare:

4

5
I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

6

7

8

9
On **May 18, 2012**, I served the attached:

10
**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**

11
**[PROPOSED] ORDER**

12
by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

13

14

15
Eric Charles Rodney Knapp, J-10618
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA  95327
In Pro Per

16

17

18
I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 18, 2012, at Sacramento, California.

19

20
S. Lowe                                              /s/ S. Lowe
Declarant                                            Signature

21

22

23

24

25

26

27

28

7

# EXHIBIT A

Eric K'nAPP, CDCR #J-10618
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, California 95327

In Pro Per

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Eric K'nAPP,                                    No. 1:08-CV-01779-BAM (PC)

         Plaintiff,

                                                PLAINTIFF'S FIRST RULE 36 REQUEST FOR
v.                                              ADMISSIONS FROM DEFENDANT BACKLUND.

Matthew Cate, et al.,

         Defendants.
_____/

         Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Rule 250.4 of

the Local Rules of the U.S. District Court for the Eastern District of

California, and the Court's discovery order of 3/5/12 (Doc. 92), Plaintiff Eric

K'nAPP requests that Defendant Backlund please admit the truth of the following

statements within 45 days after this request is served:

         1. At all times relevant to this action, you were an official, employee,

or agent of the California Department of Corrections and Rehabilitation (CDCR).

         2. When you became a CDCR official, employee, or agent, you took the oath

at Article XX, Section 3, of the Constitution of the State of California.

         3. You have sworn to "bear true faith and allegiance to the Constitution

of the United States and the Constitution of the State of California."

         4. You have also sworn to "well and faithfully discharge" all of the

duties and responsibilities you have as a CDCR official, employee, or agent.

         5. CDCR officials, employees, and agents have a sworn, ministerial, legal,

and ethical duty and responsibility to uphold, protect, and neither violate nor

-1-

cause or allow any other persons to violate the rights that CDCR prisoners have according to the Constitution and laws of the United States and of the State of California.

6. All CDCR officials, employees, and agents have a duty and responsibility -- including but not limited to under Title 15 of the California Code of Regulations (15CCR), at 15CCR § 3291(a), and the Department Operations Manual of the CDCR (DOM), at DOM § 33030.3 -- to enforce all laws, regulations, and procedures which govern the actions and activities of all persons who come into contact with any CDCR prisoners.

7. CDCR officials, employees, and agents have a sworn, ministerial, legal, and ethical duty and responsibility to follow, obey, and neither violate nor cause or allow any other persons to violate the rules, regulations, policies, procedures, and laws that govern the CDCR.

8. All CDCR officials, employees, and agents have a duty and responsibility to not aid or abet any person in violating any law, regulation, or procedure to the detriment of any CDCR prisoner.

9. All CDCR officials, employees, and agents have a duty and responsibility -- including but not limited to under 15CCR § 3291(a) and DOM § 33030.3 -- to intervene and seek assistance from other CDCR officials, employees, and agents immediately upon becoming aware of any CDCR official, employee, or agent engaging in any unauthorized actions or activities that violate any laws, regulations, or procedures to the detriment of any CDCR inmate.

10. You were acting under color of California law at all times relevant to Plaintiff's action against you.

11. During all times mentioned in Plaintiff's third amended complaint (Doc. 37), CDCR officials, employees, and agents had unfettered freedom to physically access prisoners' Central Files anytime they wanted, for however long

they wanted, as often as they wanted, and without any CDCR official, employee, or agent keeping them under any type of constant and direct surveillance or other visual monitoring throughout the entire time of such access.

12. You physically accessed Plaintiff's Central File (C-File) prior to the Unit Classification Committee (UCC) of 8/13/08.

13. You physically accessed Plaintiff's C-File prior to the Institution Classification Committee (ICC) of 11/13/08.

14. You physically accessed Plaintiff's C-File between 11/13/08 and the date of this request.

15. You were not under any CDCR official's, employee's, or agent's constant or direct surveillance or other visual monitoring throughout the entire period of each and every time you physically accessed Plaintiff's C-File since 7/31/08.

16. During all times mentioned in Plaintiff's third amended complaint (Doc. 37), CDCR officials, employees, and agents had unfettered freedom to physically access prisoners' Unit Health Records anytime they wanted, for however long they wanted, as often as they wanted, and without any CDCR official, employee, or agent keeping them under any type of constant or direct surveillance or other visual monitoring or observation throughout the entire time of such access.

17. You physically accessed Plaintiff's Unit Health Record (UHR) prior to the Unit Classification Committee (UCC) of 8/13/08.

18. You physically accessed Plaintiff's UHR prior to the Institution Classification Committee (ICC) of 11/13/08.

19. You physically accessed Plaintiff's UHR between 11/13/08 and the date of this request.

20. You were not under any CDCR official's, employee's, or agent's constant or direct surveillance or other visual monitoring or observation

throughout the entire period of each and every time you physically accessed Plaintiff's UHR since 7/31/08.

21. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you became aware of Plaintiff's existence and incarceration within the CDCR.

22. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you became aware that Plaintiff had been speaking out against the CDCR and CDCR prisons, officials, employees, agents, customs, policies, practices, etc. for some period of time preceding 7/31/08.

23. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you became aware of a person named B. Cayenne Bird.

24. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you became aware of a group called United for No Injustice, Oppression, or Neglect (UNION).

25. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you visited UNION's website on the Internet at lunionl.com.

26. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you had gone to pacovilla.com on the Internet.

27. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you became aware that B. Cayenne Bird is the director of UNION and/or the administrator of lunionl.com.

28. At some point in time prior to Plaintiff's arrival at SCC on 7/31/08, you became aware that B. Cayenne Bird and/or UNION had been publicly speaking out against the CDCR and CDCR prisons, officials, employees, agents, customs, policies, practices, etc. for some period of time preceding 7/31/08.

29. The CDCR and SCC are subject to the Americans with Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C. § 12101 et seq.

30. The CDCR and SCC are subject to the Rehabilitation Act of 1973 (hereinafter "RA"), 29 U.S.C. § 701 et seq.

-4-

31. The CDCR is a public entity.

32. SCC is a public entity.

33. The CDCR and SCC receive federal financial assistance.

34. The CDCR and SCC are required by the ADA and RA to reasonably accommodate the known mental conditions of CDCR inmates.

35. Sleeping, reading, concentrating, thinking, and working are major life activities under the ADA.

36. Sleeping, reading, concentrating, thinking, and working are benefits, services, programs, and activities that are afforded to CDCR inmates by the CDCR and SCC.

37. Discrimination within the meaning of the ADA includes not making reasonable accommodations to the known physical and mental limitations of persons with disabilities.

38. Posttraumatic stress disorder (hereinafter "PTSD") is a serious mental condition.

39. PTSD is episodic in nature.

40. PTSD can go into remission.

41. PTSD is characterized by a waxing and waning of symptoms that can be suddenly triggered and even exacerbated by a variety of life stressors.

42. Persons can suffer PTSD throughout their entire lives after experiencing traumatic events and circumstances.

43. A person can suffer PTSD as a result of physical trauma.

44. Persons can suffer PTSD as a result of mental, emotional, or otherwise nonphysical trauma.

45. Persons can suffer PTSD as a result of traumas that are not necessarily life-threatening.

46. Plaintiff arrived at SCC on 7/31/08 with an Axis-I mental diagnosis of PTSD.

47. Following Plaintiff's arrival at SCC on 7/31/08, you became aware that multiple CDCR doctors at multiple CDCR prisons since 1996 had repeatedly diagnosed Plaintiff as suffering PTSD and PTSD-related conditions.

48. Plaintiff did not stop suffering PTSD as a result of being transferred to SCC on 7/31/08.

49. Plaintiff's suffering of PTSD constitutes a mental disability under the ADA.

50. Plaintiff's suffering of PTSD constitutes a mental handicap under the RA.

51. Plaintiff's mental condition is a disability under the ADA even if/when it goes into remission insofar as it impairs his ability to perform major life activities when active.

52. The ameliorative effects of mitigating measures such as medication, reasonable accommodations, and/or learned behavioral or adaptive or neurological modifications are irrelevant to a determination of whether PTSD substantially limits one or more of Plaintiff's major life activities.

53. Plaintiff's mental condition is "permanent" within the meaning of the ADA because he has been repeatedly diagnosed with it since 1996 and it is not likely to ever stop affecting his ability to perform major life activities without impairment.

54. Upon or following Plaintiff's arrival at SCC on 7/31/08, you knew or reasonably should have known that multiple CDCR officials, employees, and agents had repeatedly afforded Plaintiff single-cell housing at multiple CDCR prisons since 2003 as a reasonable and necessary accommodation of his long-diagnosed mental condition.

55. SCC is not exempt from housing inmates alone in cells by themselves.

56. SCC was and continued housing multiple inmates alone in cells by themselves on Tuolumne Unit upon and following Plaintiff's arrival at SCC on

-6-

7/31/08.

57. Plaintiff arrived at SCC on 7/31/08 with the "S" suffix for single-cell housing.

58. Plaintiff's suffering of PTSD substantially impairs his ability to sleep, read, think, concentrate, do legal work, write, use the toilet, and perform other major life activities when he is locked inside a cell with another inmate.

59. Plaintiff's suffering of PTSD substantially impairs his ability to sleep, read, think, concentrate, do legal work, write, use the toilet, and perform other major life activities when he is housed in a dormitory.

60. Single-cell housing is a reasonable and necessary accommodation of Plaintiff's mental condition.

61. Under the ADA and RA, single-celling Plaintiff provides direct amelioration of the PTSD-related mental and physiological problems that Plaintiff suffers as a result of being locked inside a cell with another inmate and housed in a dormitory.

62. Under the ADA and RA, single-celling Plaintiff is a "necessary" accommodation of Plaintiff's mental condition.

63. Under the ADA and RA, single-celling Plaintiff does not impose any undue financial or administrative burden on the CDCR, SCC, or any CDCR prison, official, employee, or agent.

64. Under the ADA and RA, single-celling Plaintiff is a "reasonable" accommodation of Plaintiff's mental condition.

65. Under the ADA and RA, the CDCR and SCC are required to remove any and all transportation, including distance, which limit an inmate's physically disabled family members' or friends' ability to equally, meaningfully, or effectively access, participate in, or otherwise enjoy the benefits of the CDCR's inmate visitation programs, activities, and services.

66. Under the ADA and RA, the CDCR and SCC are required to remove any and all transportation, including distance, which limit an inmate's ability to equally, meaningfully, or effectively access, participate in, or otherwise enjoy the benefits of the CDCR's inmate visitation programs, activities, and services, particularly when such access, participation, and benefit has been expressly recognized and identified by the CDCR as a reasonable and necessary accommodation of the inmate's mental condition.

67. California Penal Code § 5068 and 15CCR § 3375.2(b)(10) indicate that CDCR prisoners shall be housed at institutions nearest their homes.

68. Plaintiff is from the Sacramento area.

69. Multiple CDCR mental-health doctors at multiple CDCR prisons since 1998 have recognized and affirmed that frequent contact visits on a regular basis with his physically disabled mother and his other loved ones who live in the Sacramento area is a critical component of Plaintiff's individualized treatment/therapy plan for helping him manage, cope, and live with his suffering of PTSD and PTSD-related conditions.

70. Plaintiff was transferred to SCC on 7/31/08 in part for the specific purpose of getting him close to Sacramento to facilitate visitation with his physically disabled mother and his other loved ones who live in the Sacramento area to help him manage, cope, and live with his suffering of PTSD and PTSD-related conditions.

71. Housing Plaintiff close to Sacramento is a reasonable and necessary accommodation of his mental condition.

72. Under the U.S. Constitution's Eighth Amendment, Plaintiff is entitled to housing that does not jeopardize his present or his future mental or physical health, his safety, or his life.

73. Double-celling Plaintiff unjustifiably exposes Plaintiff and/or whomever gets locked inside a cell with Plaintiff to a substantial risk of

-8-

serious or irreparable injury or harm that is potentially detrimental to their present and future health, safety, and life.

74. Double-celling Plaintiff does not advance a legitimate penological objective.

75. Housing Plaintiff in a dormitory unjustifiably exposes Plaintiff and/or anyone housed with Plaintiff in a dormitory to a substantial risk of serious or irreparable injury or harm that is potentially detrimental to their present and future health, safety, and life.

76. Housing Plaintiff in a dormitory does not advance a legitimate penological objective.

77. Double-celling Plaintiff would be deliberately indifferent of Plaintiff's known mental condition.

78. Housing Plaintiff in a dormitory would be deliberately indifferent of his known mental condition.

79. At some point in time before Plaintiff entered the room and appeared at the Unit Classification Committee (UCC) of 8/13/08, you could have had access to any part(s) of any volume(s) of Plaintiff's Central File whenever you so desired, for no particular reason, and without being under any type of constant or direct visual monitoring.

80. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, nothing legally prohibited you from being allowed to look through any part of Plaintiff's Central File and thereupon forming personal opinions, resentments, biases, prejudices, or other negative thoughts, feelings, or emotions about anything contained therein concerning Plaintiff.

81. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware of B. Cayenne Bird.

82. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware of UNION.

-9-

83. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware that B. Cayenne Bird and/or UNION had been engaging in public activism toward the CDCR and CDCR prisons, officials, employees, agents, customs, policies, practices, etc. for some period of time prior to 8/13/08.

84. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you visited lunion1.com on the Internet.

85. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you had gone to pacovilla.com on the Internet.

86. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware that B. Cayenne Bird is Plaintiff's mother.

87. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware that Plaintiff had been speaking out against the CDCR and CDCR prisons, officials, employees, agents, customs, policies, practices, etc. for some period of time preceding 8/13/08.

88. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware that Plaintiff's mother had complained about CDCR officials, employees, and agents at SCC violating Plaintiff's rights and/or the law between 7/31/08 and 8/13/08.

89. At some point in time before Plaintiff entered the room and appeared at the UCC of 8/13/08, you became aware that Plaintiff had complained about CDCR officials, employees, and agents at SCC violating his rights and/or the law between 7/31/08 and 8/13/08.

90. At some point in time before Plaintiff entered the room and appeared at the Institution Classification Committee (ICC) of 11/13/08, you could have had access to any part(s) of any volume(s) of Plaintiff's Central File whenever you so desired, for no particular reason, and without being under any type of

-10-

constant or direct visual monitoring.

91. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, nothing legally prohibited you from being allowed to look through any part of Plaintiff's Central File and thereupon forming personal opinions, resentments, biases, prejudices, or other negative thoughts, feelings, or emotions about anything contained therein concerning Plaintiff.

92. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware of B. Cayenne Bird.

93. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware of UNION.

94. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware that B. Cayenne Bird and/or UNION had been engaging in public activism toward the CDCR and CDCR prisons, officials, employees, agents, customs, policies, practices, etc. for some period of time prior to 11/13/08.

95. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you visited lunionl.com on the Internet.

96. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you had gone to pacovilla.com on the Internet.

97. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware that B. Cayenne Bird is Plaintiff's mother.

98. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware that Plaintiff had been speaking out against the CDCR and CDCR prisons, officials, employees, agents, customs, policies, practices, etc. for some period of time preceding 11/13/08.

99. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware that Plaintiff's mother had complained

-11-

about CDCR officials, employees, and agents at SCC violating Plaintiff's rights and/or the law between 7/31/08 and 11/13/08.

100. At some point in time before Plaintiff entered the room and appeared at the ICC of 11/13/08, you became aware that Plaintiff had complained about CDCR officials, employees, and agents at SCC violating his rights and/or the law between 7/31/08 and 11/13/08.

DATED: May 8, 2012

_____
Eric K'nAPP, Plaintiff

DECLARATION OF SERVICE BY MAIL

Case:  K'nAPP v. Cate, et al.

No. :  1:08-CV-01779-BAM (PC) (E.D. Cal., Fresno)


        I, the undersigned, declare under penalty of perjury that the following is true and
correct:

        On the below date of execution, I served the accompanying

                        Plaintiff's First Rule 36 Request for Admissions
                        from Defendant  Backlund

on counsel for the Defendants in the above-entitled matter by putting a true copy thereof
inside an envelope addressed as follows and thereupon submitting the envelope to an
officer at the prison where I am housed, whereupon the officer took possession of the
envelope for processing in accordance with prison mail procedures:

        John W. Riches II and David E. Brice, Deputy Attorneys General
        1300 I Street, Suite 125
        P.O. Box 944255
        Sacramento, CA 94244-2550

Executed May  8 , 2012, at Jamestown, California.


                                        _____
                                        Eric K'nAPP, CDCR #J10618
                                        C1-117, Sierra Conservation Center
                                        5150 O'Byrnes Ferry Road
                                        Jamestown, California 95327